******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MARK HEINONEN *v.* WALLACE I. GUPTON ET AL.
(AC 38414)

Sheldon, Keller and Prescott, Js.

*Argued January 13—officially released May 9, 2017*

(Appeal from Superior Court, judicial district of
Danbury, Truglia, J.)

*Mark Heinonen*, self-represented, the appellant
(plaintiff).

*Leslie A. Link*, for the appellees (defendants).

*Opinion*

PER CURIAM. The self-represented plaintiff, Mark Heinonen, appeals from the judgment of the trial court dismissing this action alleging fraud on the part of the defendants, Wallace I. Gupton and Roberta S. Douglas, in connection with their purchase of property located in the town of Sherman. The dispositive claim in this appeal is whether the court improperly dismissed this action for lack of subject matter jurisdiction due to his lack of standing.[1] We affirm the judgment of the court.

The following facts and procedural history are relevant to this appeal. On February 6, 2015, the plaintiff filed a complaint alleging that in January, 2012, the defendants illegally purchased property located at 138 Rt. 37 South in Sherman (premises) "without the owners' knowledge and for a fraction of its real value." In paragraph three of his complaint, he alleged that in October, 2007, he transferred his interest in the premises to his three children by means of a trust instrument.[2] In his prayer for relief, the plaintiff requested the sum of $3,000,000 to compensate him for the "agony he has suffered as a result of the defendants' fraud—cruel and illegal dealings."

On March 13, 2015, the defendants filed a motion to dismiss this action and an accompanying memorandum of law on the ground that the court lacked subject matter jurisdiction. Specifically, the defendants argued that the plaintiff, as a *prior* owner of the premises, lacked standing to prosecute a claim that he was defrauded as the rightful owner of the property. On April 9, 2015, the plaintiff, by means of a single filing, objected to the motion to dismiss and moved for summary judgment in his favor.[3] The court heard argument on the defendants' motion to dismiss on April 27, 2015.

In its decision granting the motion to dismiss, the court found in relevant part: "In this action, the plaintiff . . . claims compensatory damages for fraudulent actions allegedly committed by the defendants when they purchased [the premises].[4] The plaintiff claims that in January of 2012, the defendants illegally purchased the premises 'without the owner's knowledge and for a fraction of its real value.' The defendants argue in support of their motion that it is undisputed (and admitted in the plaintiff's complaint) that he no longer owns any interest in the premises and, therefore, has no standing to bring the present suit. In response to the defendants' motion to dismiss, the plaintiff has filed a combined objection to the motion to dismiss and motion for summary judgment[5] . . . essentially asserting that the manner in which the defendants came into ownership of the premises was tainted by illegality. . . .

"After reviewing the allegations of the plaintiff's complaint and the briefs of the parties, the court is satisfied

and agrees with the defendants that the plaintiff has failed to allege sufficient facts to invoke the court's jurisdiction. The record indicates that the plaintiff is not the current owner of the premises which are the subject of this action, had no interest in the premises at the time of conveyance to the defendants, or any time thereafter, and has not owned any interest in the premises since October of 2007." (Footnotes added.)

The court rendered a judgment of dismissal on May 12, 2016, after concluding that the plaintiff lacked standing to bring this action because he was not the owner of the premises and, therefore, was not an aggrieved party with respect to the subject matter of his complaint. On May 27, 2015, the plaintiff filed a motion for clarification, articulation, and reargument, which the court denied on June 1, 2015. This appeal followed. Additional facts will be set forth as necessary.

Before we address the merits of the plaintiff's claim, we first set forth the standard of review. "The proper procedural vehicle for disputing a party's standing is a motion to dismiss." *D'Eramo* v. *Smith*, 273 Conn. 610, 615 n.6, 872 A.2d 408 (2005). "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Internal quotation marks omitted.) *Caruso* v. *Bridgeport*, 285 Conn. 618, 627, 941 A.2d 266 (2008). "[O]ur review of the trial court's ultimate legal conclusion and resulting [granting] of the motion to dismiss will be de novo. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light . . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Citation omitted; internal quotation marks omitted.) *Keller* v. *Beckenstein*, 122 Conn. App. 438, 442–43, 998 A.2d 838 (2010), rev'd on other grounds, 305 Conn. 523, 46 A.3d 102 (2012). "Any claim of lack of jurisdiction over the subject matter cannot be waived; and whenever it is found after suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the judicial authority shall dismiss the action." Practice Book § 10-33. "Whenever the absence of jurisdiction is brought to the notice of the court or tribunal, cognizance of it must be taken and the matter passed upon before it can move one further step in the cause; as any movement is necessarily the exercise of jurisdiction." (Internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, 239 Conn. 93, 99, 680 A.2d 1321 (1996).

In the present case, the defendants' motion to dismiss was premised on the plaintiff's lack of standing. "If a party is found to lack standing, the court is without subject matter jurisdiction to hear the case. Because standing implicates the court's subject matter jurisdiction, the plaintiff bears the burden of establishing standing. A trial court's determination of whether a plaintiff lacks standing is a conclusion of law that is subject to plenary review on appeal. We conduct that plenary review, however, in light of the trial court's findings of fact, which we will not overturn unless they are clearly erroneous. . . . In undertaking this review, we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Success, Inc.* v. *Curcio*, 160 Conn. App. 153, 162–63, 124 A.3d 563, cert. denied, 319 Conn. 952, 125 A.3d 531 (2015).

"Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest . . . . Second, the party claiming aggrievement must successfully establish that the specific personal and legal interest has been specifically and injuriously affected by the decision. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) *Gold* v. *Rowland*, 296 Conn. 186, 207, 994 A.2d 106 (2010).

"Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered

or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy. . . . The requirement of directness between the injuries claimed by the plaintiff and the conduct of the defendant also is expressed, in our standing jurisprudence, by the focus on whether the plaintiff is the proper party to assert the claim at issue." (Internal quotation marks omitted.) *PNC Bank, N.A.* v. *Kelepecz*, 289 Conn. 692, 705, 960 A.2d 563 (2008).

In his complaint, the plaintiff admitted that he had not possessed any ownership interest in the premises since October, 2007, and that the sale that he alleges was fraudulent and illegal took place in 2012. Although the plaintiff challenges the legality of the sale of the premises to the defendants, it is undisputed factually that he relinquished any interest, whether legal or equitable in nature, to the premises when he transferred his interest to the trust he created for the benefit of his children.[6] After thoroughly reviewing the record, we agree with the court that the plaintiff, in his individual capacity, was not entitled to set the machinery of the court in operation to obtain redress for an injury he claims to have suffered as a result of an alleged fraudulent transfer of the premises. The plaintiff did not hold an ownership interest, whether legal or equitable in nature, in the premises at the time he filed the complaint—and indeed had held no such interest since 2007. The sale occurred in 2012. An "owner" is "[o]ne who has the right to possess, use, and convey something; a person in whom one or more interests are vested," and "ownership" means "[t]he bundle of rights allowing one to use, manage, and enjoy property, including the right to convey it to others." Black's Law Dictionary (9th Ed. 2009). If the plaintiff intended to assert a claim to protect an allegedly fraudulent deprivation of the interest of the children's trust in the premises, such a claim, if viable, should have been brought by the trustee.[7] "The trustee is the proper person to bring an action against anyone who wrongfully interferes with the interests of a trust." *Naier* v. *Beckenstein*, 131 Conn. App. 638, 646, 27 A.3d 104, cert. denied, 303 Conn. 910, 32 A.3d 963 (2011). The court's conclusion that the plaintiff lacked standing is legally correct and wholly supported by facts that the plaintiff fully admitted.

The judgment is affirmed.

[1] Because our decision on the issue of subject matter jurisdiction is dispositive of this appeal, we need not address the plaintiff's other four claims, which essentially allege error with respect to the court's refusal to consider his case on the merits.

[2] The plaintiff attached to his combined objection to the motion to dismiss and motion for summary judgment a copy of the trust instrument and the probate court decree, dated December 28, 2011, *Landgrebe, J.*, accepting and approving it. The probate court decree references the court's awareness of both "[the plaintiff's] stated . . . declination to receive . . . [his interest in the premises] and [the plaintiff's recognition of] the transfer of his interest [in the premises] to his children by way of his described irrevocable trust

agreement to the Court . . . ."

[3] Attached to this filing are ten exhibits comprised of the trust instrument, excerpts from legal decisions and treatises, and various other documents, without any accompanying analysis. Exhibit eight is a copy of the contract of sale for the premises, executed by the defendants and Arthur Scott, the executor of the estate of the plaintiff's mother.

[4] "This action is one of a long line of cases brought by the plaintiff to contest the disposition by the New Fairfield/Sherman Probate Court of the assets of the estate of Barbara H. Scott, the [plaintiff's] late mother, who died on December 1, 2006. The principal asset of her estate [was the premises] . . . .

"The plaintiff did attach what purports to be two decrees of the Housatonic Regional Probate Court . . . . The first is a decree for sale of the [premises] in which it was expressly noted that 'the will of the said deceased (Scott) does not prohibit the sale or mortgage of said property.' " *Heinonen* v. *Landgrebe*, Superior Court, judicial district of Danbury, Docket No. CV-12-5009022-S (January 15, 2014), appeal dismissed, Appellate Court, Docket No. 36860 (July 9, 2014), cert. denied, 314 Conn. 922, 100 A.3d 853 (2014).

[5] The court, having found it lacked subject matter jurisdiction due to the plaintiff's lack of standing, did not consider his motion for summary judgment.

[6] The plaintiff questions the validity of the probate of his mother's will by asserting that the defendants, along with certain lawyers and relatives of the decedent, illegally participated in the perpetration of a fraud upon the rightful heirs of the estate, which commenced with a redrafting of her will shortly before she died. The defendants purchased the premises from the estate in a sale that was approved by the probate court. Although the plaintiff claims to be seeking to protect his children's interests, during argument before the trial court, he referred to himself as the owner of both the premises and the trust, and his prayer for relief seeks only compensation for himself.

[7] To the extent that the plaintiff is the trustee, he did not bring his action in that capacity.