******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# LEBANON HISTORICAL SOCIETY, INC. *v.*
# ATTORNEY GENERAL OF THE STATE
# OF CONNECTICUT ET AL.
## (AC 43912)

Bright, C. J., and Alvord and Harper, Js.

*Syllabus*

The plaintiff historical society sought to quiet title to, and to impose conser-
vation and preservation restrictions on, certain real property in the town
of Lebanon, including a portion of the town green where the defendant
F, a church, was located. The plaintiff sought to ensure that the parcels
would always remain dedicated to a public purpose and that reasonable
controls would be placed on the property so as to maintain the historic
use and character of the town green. The court granted F's motion to
dismiss as to the church parcel on the ground that the plaintiff lacked
standing and rendered judgment thereon, from which the plaintiff
appealed to this court. *Held* that the trial court correctly concluded that
the plaintiff lacked standing to bring the action as to the church parcel
because it claimed no title or interest in that parcel as required by the
applicable statute (§ 47-31 (a)): because the plaintiff did not have an
actual interest in F's property, it did not have standing to bring a quiet
title action as to that property, and the plaintiff did not hold any conserva-
tion or preservation restrictions on F's property, rather, it sought to
create such restrictions; moreover, even assuming that the plaintiff had
conservation and preservation restrictions on the majority of the town
green, holders of such restrictions have an interest in only the land on
which those restrictions exist, not in land that is adjacent to, or con-
nected to, that land; furthermore, the plaintiff's general interest in main-
taining the public nature of the town green, including F's property, was
not an actual interest sufficient to establish standing under § 47-31 (a),
and there was no question that the town had standing to impose, and was
the proper party to pursue, conservation and preservation restrictions
on F's property.

Argued October 4—officially released December 21, 2021

*Procedural History*

Action, inter alia, seeking to quiet title to certain real
property, and for other relief, brought to the Superior
Court in the judicial district of New London, where the
defendant Nancy Gentes et al. filed a cross complaint;
thereafter, the plaintiff withdrew the action as to the
defendant Sons of the American Revolution et al.; subse-
quently, the court, *Knox, J.*, rendered a judgment by
stipulation as to the cross complaint; thereafter, the
court, *Calmar, J.*, granted the motion to dismiss filed by
the defendant First Congregational Church of Lebanon
and rendered judgment thereon, from which the plain-
tiff appealed to this court. *Affirmed.*

*Leslie P. King*, with whom were *Sara C. Bronin*,
and, on the brief, *Dean A. Morande*, pro hac vice, for
the appellant (plaintiff).

*Alayna M. Stone*, assistant attorney general, with
whom were *Caitlin M.E. Calder*, assistant attorney gen-
eral, and, on the brief, *William Tong*, attorney general,
*Clare Kindall*, solicitor general, and *Karen Gano* and
*Jane Rosenberg*, assistant attorneys general, for the
appellee (named defendant).

*Mary Mintel Miller*, with whom was *Jeffrey N. Kaplan*, for the appellee (defendant First Congregational Church of Lebanon).

*Jeffrey Gentes* filed a brief on behalf of the appellees (defendant Nancy Gentes et al.).

*Opinion*

BRIGHT, C. J. In this action to quiet title to, and to impose conservation and preservation restrictions on, property in the town of Lebanon (town), the plaintiff, Lebanon Historical Society, Inc., appeals from the judgment of the trial court granting the motion to dismiss filed by the defendant First Congregational Church of Lebanon (church), on the ground that the plaintiff lacks standing to bring the action.[1] On appeal, the plaintiff contends that the court erred when it concluded that the plaintiff lacked standing to bring a quiet title action on the portion of the Lebanon Town Green (Green), where the church is located (Church Parcel). We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. The Green is the largest town green in Connecticut and an important historic resource for the town. In 1692, the property that now makes up the town, including the Green, was conveyed in fee by Oweneco, Sachem of the Mohegan Tribe of Indians, to the four original proprietors of the town. In 1705, that conveyance was extended to additional proprietors, together with their heirs and assignees. Those proprietors were the last known owners of the Green, and, through the passage of time and the impossibility of identifying the proprietors' heirs and assignees, the Green was left to public use.

The plaintiff is a membership based § 501 (c) (3)[2] nonstock, tax-exempt corporation that preserves and interprets the history of the town, including the Green. Specifically, the plaintiff educates the public about the town's history, creates and commissions historical events about the town, organizes and sponsors events on the Green, publishes books and pamphlets, and owns and operates several buildings located adjacent to the Green.

In 2017, the town decided to expand its public library, part of which is located on the Green. In order to obtain state funding for the project, the town was required to demonstrate that it held legal title to that property (Library Parcel). After running a title search for that property, however, the town learned that there was no known owner of either the Library Parcel or the Green as a whole. Instead, the Green had been dedicated to public use since the early 1700s.

After learning that it did not own the Library Parcel, in January, 2018, the town brought an action to quiet title to that parcel, as well as to the part of the Green where the town hall is located (Town Hall Parcel).[3] The plaintiff filed a counterclaim in that action, asking the court to impose conservation and preservation restrictions on both parcels.[4] In March, 2019, the court rendered a judgment by stipulation in the town's quiet title action, quieting title to both the Library and Town Hall

Parcels in the town, and imposing conservation and preservation restrictions on both parcels, as the plaintiff had requested in its counterclaim. Those restrictions are currently held by the plaintiff.

While the town's quiet title action was pending, in February, 2019, the plaintiff commenced the underlying action, which sought to quiet title to the three remaining sections of the Green: (1) the northernmost part of the Green, sometimes referred to as the Common (Northern Parcel); (2) parts of the Green that are adjacent to privately owned property (Neighbor Parcel); and (3) the Church Parcel. With respect to the Northern Parcel, the plaintiff sought to quiet title in the town. With respect to the Neighbor Parcel, the plaintiff sought to quiet title in the individuals who own properties that are adjacent to the Green. With respect to the Church Parcel, the plaintiff sought to quiet title in the church. Most importantly, the plaintiff also asked that conservation and preservation restrictions be imposed in its favor on each of the three parcels. Through these restrictions, the plaintiff sought to ensure that the parcels would always remain dedicated to a public purpose and that reasonable controls would be placed on the demolition, alteration, and construction of buildings and other improvements on the property, so as to maintain the historic use and character of the Green.

Thereafter, the plaintiff reached stipulated agreements with the town and almost all of the individuals who own properties adjacent to the Green concerning the imposition of conservation and preservation restrictions on the Northern Parcel and the Neighbor Parcel. The stipulation resolved all of the plaintiff's requests for conservation and preservation restrictions on the Green, except with respect to the Church Parcel and the property of the defendants Robert M. Gentes and Nancy W. Gentes (collectively, Gentes). Consequently, the plaintiff then filed an amended complaint seeking only to quiet title to, and the imposition of conservation and preservation restrictions on, the Church Parcel and withdrew its complaint as to the Gentes.[5]

In March, 2019, before the plaintiff filed its amended complaint, the church filed a motion to dismiss the plaintiff's quiet title action, claiming that the plaintiff lacked standing to bring the action because it claimed no title or interest in the Church Parcel, as required by General Statutes § 47-31 (a).[6] The plaintiff opposed the church's motion, arguing that it had standing because (1) the conservation and preservation restrictions that it seeks to impose are " 'interests in land,' " (2) the plaintiff holds conservation and preservation restrictions on parts of the Green that are adjacent to the Church Parcel, and (3) the plaintiff's extensive involvement with preserving the Green provides it with an additional interest sufficient to convey standing. Later that year, the plaintiff filed another memorandum

opposing the church's motion to dismiss, in which it explained that, as a result of separate litigation, it held conservation and preservation restrictions on approximately 95 percent of the Green, a development that it claimed strengthened its standing to bring the underlying action.[7]

In December, 2019, the trial court, *Calmar, J.*, granted the church's motion to dismiss. The court concluded that the plaintiff lacked standing to bring a quiet title action against the church because it did not hold any conservation or preservation restrictions on the Church Parcel, meaning that the plaintiff did not have an actual interest in the property, as required by § 47-31 (a). The plaintiff and the attorney general both filed motions to reargue/reconsider, asserting that the court erred in overlooking the public use character of the Church Parcel and the plaintiff's stated mission to protect the public character of the Green. The trial court denied both motions, and the plaintiff appealed.

While the plaintiff's quiet title action was pending, the church filed its own action to quiet title in the Church Parcel. The town then filed a counterclaim in which it sought the "imposition of conservation and preservation restrictions on [the Church Parcel] . . . which ensure that the [Church Parcel] shall be dedicated to a public purpose in perpetuity and which place reasonable controls on improvements." In its answer to the town's counterclaim, the church agreed to the proposed restrictions. Thereafter, the church filed a motion for judgment seeking to quiet title to the Church Parcel in the church, subject to the conservation and preservation restrictions requested by the town. In November, 2020, however, the plaintiff moved to intervene as a defendant in the church's quiet title action and filed a counterclaim seeking additional conservation and preservation restrictions that were not included in the restrictions sought in the town's counterclaim and agreed to by the church.[8] The plaintiff's motion to intervene in that action was granted by the court. In December, 2020, given the present appeal and its likely effect on the church's quiet title action, the church moved to stay that action, and the court granted its motion.

On appeal from the court's judgment granting the church's motion to dismiss in the present case, the plaintiff and the attorney general[9] contend that the plaintiff has standing to bring an action to quiet title to the Church Parcel because (1) the plaintiff has an interest in the parcel, given its dedication to preserving the history and character of the Green, of which the Church Parcel is a part, (2) the plaintiff is the holder of conservation and preservation restrictions on the remaining 95 percent of the Green, and the Green is a contiguous and indivisible whole, and (3) if the plaintiff does not have standing to bring this action, no one will ever have

standing to seek the imposition of conservation and preservation restrictions on the parcel. The plaintiff also contends that it has standing because (1) to hold that it lacks standing in the present case would contradict the court's judgment in the town's first quiet title action, and (2) the general presumption in favor of concluding that subject matter jurisdiction exists should apply. We are not persuaded by any of these arguments.

We begin by setting forth the applicable standard of review and principles of law that guide our analysis. "The proper procedural vehicle for disputing a party's standing is a motion to dismiss. . . . A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Citation omitted; internal quotation marks omitted.) *Heinonen* v. *Gupton*, 173 Conn. App. 54, 58, 162 A.3d 70, cert. denied, 327 Conn. 902, 169 A.3d 794 (2017). When a court "decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light . . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) Id.

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Internal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Bliss*, 159 Conn. App. 483, 488, 124 A.3d 890, cert. denied, 320 Conn. 903, 127 A.3d 186 (2015), cert. denied, 579 U.S. 903, 136 S. Ct. 2466, 195 L. Ed. 2d 801 (2016). "If a party is found to lack standing, the court is without subject matter jurisdiction to hear the case. Because standing implicates the court's subject matter jurisdiction, the plaintiff bears the burden of establishing standing." (Internal quotation marks omitted.) *Heinonen* v. *Gupton*, supra, 173 Conn. App. 59. A court's determination of whether a plaintiff lacks standing is a conclusion of law that is subject to plenary review. Id. "In undertaking this review, we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) Id.

The plaintiff contends that it has standing to bring an action to quiet title to the Church Parcel under § 47-31 (a). Section 47-31 (a) provides in relevant part that a quiet title action "may be brought by any person claiming title to, or any interest in, real . . . property

. . . ." The purpose of this requirement "is to make certain that a plaintiff has, within the purview of the allegations of his complaint, not a mere groundless claim but an *actual interest* in the property sufficient to justify his instituting an action concerning it . . . ." (Emphasis added.) *Loewenberg* v. *Wallace*, 147 Conn. 689, 692, 166 A.2d 150 (1960); see also *Brill* v. *Ulrey*, 159 Conn. 371, 373–74, 269 A.2d 262 (1970) (standing under § 47-31 (a) requires "actual interest" in real property at issue). Unless a plaintiff has an actual interest in the real property at issue, a plaintiff "has no right to maintain an action under [§ 47-31 (a)] for the adjudication of any claims concerning the property." *Loewenberg* v. *Wallace*, supra, 692.

We conclude, as did the trial court, that because the plaintiff does not have an actual interest in the Church Parcel, as required by § 47-31 (a), it does not have standing to bring a quiet title action as to that parcel. It is undisputed that conservation and preservation restrictions are interests in land that are sufficient to convey standing on the holders of those restrictions. See General Statutes § 47-42c ("conservation and preservation restrictions are interests in land"); General Statutes § 47-31 (a) (quiet title action can be brought by any entity claiming "any interest in" real property). The plaintiff, however, does not currently hold any conservation or preservation restrictions on the Church Parcel. Instead, it is seeking to create such restrictions. Seeking to create conservation and preservation restrictions is different from holding those restrictions. In fact, the plaintiff is seeking to create and acquire conservation and preservation restrictions on the Church Parcel precisely because it currently does not possess any that can be enforced. See General Statutes § 47-42c (indicating that conservation and preservation restrictions become interests in land only once acquired). Because the plaintiff does not currently hold any restrictions on the Church Parcel, it does not have an actual interest in that property sufficient to establish standing under § 47-31 (a).

Furthermore, assuming, as the plaintiff claims, that the plaintiff has conservation and preservation restrictions on 95 percent of the Green, our analysis and conclusion is the same. Holders of conservation and preservation restrictions, just like holders of any other interest, have an interest only in the land on which those restrictions exist, not land that is adjacent to, or connected to, that land. Again, because the plaintiff does not have an actual interest in the *specific* property to which it is seeking to quiet title, it does not have standing to bring a quiet title action on that property, regardless of the fact that the plaintiff has an actual interest in other properties that abut the Green and that are adjacent to the Church Parcel.

For these same reasons, we are equally unpersuaded

by the plaintiff's and the attorney general's argument that, because the Green is an indivisible, contiguous whole, and because the plaintiff claims to hold restrictions on 95 percent of the Green, the plaintiff must have standing to quiet title to the remaining 5 percent. Simply put, the plaintiff's lack of an actual interest in the Church Parcel is fatal to its quiet title action, regardless of what other property interests the plaintiff has in the remaining portion of the Green. To hold otherwise would allow the holder of a conservation and preservation restriction on one property to interfere with a neighbor' suse of its property because the holder of the restriction finds the neighbor's use in some way offensive. There is simply no support in our statutes or common law for such a proposition. In fact, requiring a neighbor to respond to such a claim is inconsistent with the express language of § 47-31 (a) and the decisions of our Supreme Court. See, e.g., *Loewenberg* v. *Wallace*, supra, 147 Conn. 692.

The plaintiff's argument that § 47-31 (a) permits a quiet title action brought by any person claiming "any interest" in the property at issue, and that it satisfies that requirement because it has "an interest" in maintaining and preserving the historic character of the Green, does not persuade us otherwise. Our Supreme Court's decision in *Loewenberg* makes clear that not *all* interests are sufficient for standing under § 47-31 (a); instead, interests sufficient to convey standing under § 47-31 (a) must be *actual* interests. *Lowenberg* v. *Wallace*, supra, 147 Conn. 692; see also *Brill* v. *Ulrey*, supra, 159 Conn. 375–76 (executor lacked statutory interest in real property left to decedent's heirs sufficient to have standing to bring quiet title action, despite possible interest in property, in absence of allegation and proof that property was necessary to meet claims of creditors). In fact, we have not found a single Connecticut case in which the plaintiff in a quiet title action who had standing had not alleged either title to, a present right to use, or a present right to restrict the use of the property at issue. We conclude, consistent with the decisions of our Supreme Court for more than one hundred years, that such an allegation is necessary to meet the "any interest" requirement of § 47-31 (a).[10] Consequently, the plaintiff's general interest in maintaining the public nature of the Green, including the Church Parcel, is not an actual interest sufficient for standing under § 47-31 (a).

We also are unpersuaded by the plaintiff's and the attorney general's contention that, if we determine that the plaintiff lacks standing in the present case, no one will ever have standing to protect the historic character of the Church Parcel. Indeed, there is no question that the town has standing to impose, and is the proper party to pursue, conservation and preservation restrictions on the Church Parcel. See *Cincinnati* v. *White's Lessee*, 31 U.S. (6 Pet.) 431, 437–38, 8 L. Ed. 452 (1832)

(land informally dedicated to public use belonged to city of Cincinnati, not private party). In fact, in its counterclaim in the church's quiet title action, the town already has sought the imposition of conservation and preservation restrictions on the Church Parcel. As previously noted in this opinion, the church assented to those restrictions, and moved the trial court to enter judgment quieting title to the Church Parcel in the church, subject to the restrictions that the town had requested. In light of that pending action, it is clear to us that the public's interest in the historic character and integrity of the Church Parcel can be protected without the involvement of the plaintiff.

The plaintiff further contends that the court's holding that it lacked standing was erroneous because it conflicts with the court's ruling in the town's first quiet title action, in which the court held that the Library and Town Hall Parcels could be quieted in the town, subject to the plaintiff's counterclaim that conservation and preservation restrictions be imposed on the two parcels. We are not persuaded. The plaintiff's standing to pursue its counterclaim was never litigated in that action, and there is no question that the town had standing to bring a quiet title action as to those parcels. The fact that the town, in that case, decided to enter into a conservation and preservation stipulation with the plaintiff has no bearing on whether the plaintiff has standing to bring the underlying action to quiet title to the Church Parcel.[11]

Finally, contrary to the plaintiff's contention, the general presumption favoring jurisdiction does not provide an independent basis for concluding that the plaintiff has standing to pursue the underlying action. The presumption does not do away with the requirement that the plaintiff must have standing to assert its claims. For the reasons previously set forth in this opinion, the facts alleged in the plaintiff's complaint simply are insufficient to support a conclusion that the plaintiff has standing in the present case.[12]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The summons listed the following additional defendants: the Attorney General of the state of Connecticut (attorney general); the town; the Hugh Leander Adams, Mary Trumbull Adams, and Hugh Trumbull Adams Town Memorial Fund (Memorial Fund); the Sons of the American Revolution; Sharon P. Moore; Nancy L. Mullaly; the Connecticut Daughters of the American Revolution, Inc.; Gina R. Wentworth; Robert M. Gentes and Nancy W. Gentes (collectively, Gentes); Leebg, LLC; Thomas M. McGee; Roland P. Russo; Marion B. Russo; Sarai Ledoux; Annalyn N. Bauer; Joshua A. Deal; Nicole E. Giownia; the Jean K. Reichard Trust; Cara J. Condit; Christopher M. Condit; Brian Kolar; the Connecticut Trust for Historic Preservation; "the proprietors of the [town], together with their heirs and assigns"; and "all unknown persons claiming or who may claim any rights, title, interest or estate in or lien or encumbrance upon the real property described in this complaint, adverse to the plaintiff, whether such claim or possible claim be vested or contingent."

The church, the attorney general, the town, the Memorial Fund, and the Gentes filed appearances in the trial court, but the remaining defendants

did not. The trial court granted motions for default for failure to appear as to the proprietors of the town and all unknown persons claiming an interest in the property, and the plaintiff withdrew the action as to most of the remaining defendants, including the Gentes. The Gentes, however, remain parties to the present appeal because of a cross complaint that they filed against the town and the attorney general, seeking to quiet title to their property. That cross complaint, however, is not at issue in this appeal. It also appears that the Connecticut Trust for Historic Preservation was never removed from the underlying action; however, that party has not participated in this appeal.

The church, the attorney general, the town, and the Gentes are the only defendants participating in the present appeal. The church, the attorney general, and the Gentes all filed appellees' briefs, but only the church and the attorney general attended oral argument before this court. The town neither filed a brief nor attended oral argument.

[2] Section 501 (c) (3) of title 26 of the United States Code is the provision of the Internal Revenue Code that allows for federal tax exemption for certain nonprofit organizations.

[3] The defendants in the town's action were the attorney general, the Hugh Leander Adams, Mary Trumbull Adams, and Hugh Trumbull Adams Town Memorial Fund, the church, the plaintiff in the present case, the heirs and assigns of the fifty-one proprietors of the town of Lebanon, and "all unknown persons claiming or who may claim any rights, title, interest or estate in or lien or encumbrance upon the real property described in this complaint, adverse to the plaintiff, whether such claim or possible claim be vested or contingent."

[4] Specifically, the plaintiff wanted to impose restrictions that would ensure that the parcels "shall be dedicated to a public purpose in perpetuity and which places reasonable controls on the demolition, alteration, and construction of buildings and other improvements."

[5] Also in connection with the stipulation, the town filed a second quiet title action seeking to quiet title to the Northern Parcel, subject to the plaintiff's requests for conservation and preservation restrictions on that parcel. In September, 2019, the court rendered judgment by stipulation in that quiet title action, in which the court quieted title in the Northern Parcel to the town, subject to the conservation and preservation restrictions held by the plaintiff. The judgment by stipulation mirrored the stipulation entered regarding the Northern Parcel in the present case. That judgment, however, expressly provided that it had no effect on the ownership of the Church Parcel. Finally, the town's second quiet title action resulted in a judgment regarding the Neighbor Parcel that mirrored the judgment in this case.

[6] General Statutes § 47-31 (a) provides in relevant part: "An action may be brought by any person *claiming title to, or any interest in, real or personal property*, or both, against any person who may claim to own the property, or any part of it, or to have any estate in it, either in fee, for years, for life or in reversion or remainder, or to have any interest in the property, or any lien or encumbrance on it, adverse to the plaintiff, or against any person in whom the land records disclose any interest, lien, claim or title conflicting with the plaintiff's claim, title or interest, for the purpose of determining such adverse estate, interest or claim, and to clear up all doubts and disputes and to quiet and settle the title to the property. . . ." (Emphasis added.)

[7] The attorney general joined in this memorandum.

[8] Specifically, the plaintiff sought restrictions that would "place reasonable controls on the demolition, alteration, and construction of buildings and structures on the Church Parcel . . . ." According to the plaintiff, these additional restrictions were necessary because the town's restrictions did not include any restraints on what could be done to the buildings located on the Church Parcel.

[9] Although the attorney general was named as a defendant in this action, the attorney general agrees with the position advanced by the plaintiff and, thus, argues in support of the plaintiff's claim on appeal.

[10] We further note that accepting the plaintiff's interpretation of "any interest" in § 47-31 (a) would mean that another historical preservation society could be formed and allege that it also has an interest in the conservation and preservation of the Church Parcel, but believes that the restrictions sought by the plaintiff are inadequate, thereby entwining the church and the town in potentially lengthy and expensive litigation between entities that have no actual legal interest in the Church Parcel. We refuse to interpret § 47-31 (a) in a way that would lead to such an absurd result. See *Thames*

*Talent, Ltd.* v. *Commission on Human Rights & Opportunities*, 265 Conn. 127, 138, 827 A.2d 659 (2003) (noting rule of construction that our appellate courts do not interpret statutes to reach bizarre or absurd results).

[11] The plaintiff further argues that, if we conclude that it lacks standing in the present case, the town's first quiet title action could be subject to collateral attack for lack of subject matter jurisdiction. We are unpersuaded by this contention because, as noted previously in this opinion, there is no question that the town had standing to quiet title to the Library and Town Hall Parcels in that action. See, e.g., *Cincinnati* v. *White's Lessee*, supra, 31 U.S. 437–38. Once it acquired title, it was free to enter into a conservation and preservation restriction with the plaintiff, regardless of whether the plaintiff filed a counterclaim.

[12] On appeal, the plaintiff further argues that the court erred when it failed to hold that it "had standing to seek the equitable imposition of conservation and preservation restrictions on the [Church] Parcel" through a declaratory judgment. As the church correctly notes, the plaintiff's amended complaint nowhere seeks a declaratory judgment. It is axiomatic that the plaintiff's claims are limited to the allegations of its complaint. See *Cellu Tissue Corp.* v. *Blake Equipment Co.*, 41 Conn. App. 413, 417, 676 A.2d 405 (1996) ("[i]t is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of [its] complaint" (internal quotation marks omitted)). Furthermore, because this claim was not distinctly raised before the trial court, and because the court never decided this claim, we decline to address it on appeal. *See DeChellis* v. *DeChellis*, 190 Conn. App. 853, 860, 213 A.3d 1 ("Connecticut appellate courts generally will not address issues not decided by the trial court"), cert. denied, 333 Conn. 913, 215 A.3d 1210 (2019); *State* v. *McLaughlin*, 135 Conn. App. 193, 202, 41 A.3d 694 ("[w]e cannot pass on the correctness of a trial court ruling that was never made" (internal quotation marks omitted)), cert. denied, 307 Conn. 904, 53 A.3d 219 (2012); see also *Connecticut Bank & Trust Co.* v. *Munsill-Borden Mansion, LLC*, 147 Conn. App. 30, 37, 81 A.3d 266 (2013) ("[a] claim briefly suggested is not distinctly raised" (internal quotation marks omitted)).

---